### CITY OF PAWHUSKA v. DAHLSTROM et al.

No. 15838—Opinion Filed Nov. 10, 1925.

Rehearing Denied Jan. 26, 1926.

1. **Contracts—Liability for Extras Furnished Under Supplemental Contract.**

Where it is apparent that the parties to a written agreement intend to contract concerning new and different work not comprehended by a prior written contract between the same parties, and the subsequent contract is free from ambiguity, it must be permitted to speak for itself, and a recovery for extras furnished under the subsequent contract is authorized without regard to the terms of the prior contract.

2. **Municipal Corporations—Claim of Contractor for Extra Work and Material—Burden of Proof as to Legality.**

If a plaintiff sues upon a contract for extra work and material furnished a municipal corporation thereunder, and it is not made to appear that the contract, when made, was in excess of the current revenues provided for the fiscal year in which the contract was made, and proves performance in accordance with the contract, he makes a prima facie case and the burden of proof then rests upon the municipality to prove that the debt was illegally contracted by reason of prior appropriations and disbursements.

3. **Appeal and Error—Review—Sufficiency of Evidence—Verdict Conclusive.**

Where there is competent evidence offered at the trial, reasonably tending to support the verdict of the jury, and no prejudicial errors of law are shown in the instructions of the court, or its ruling upon law questions presented during the trial, the verdict and finding of the jury are conclusive on appeal to the Supreme Court.

4. **Municipal Corporations—Claims of Contractor—Settlement—Issues for Jury.**

Evidence in the instant case examined, and held, that the question of whether a final settlement of the claims of the plaintiffs, in the instant case, was had on March 26, 1923, was properly submitted to the jury.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Osage County; Jesse J. Worten, Judge.

Action by T. Dahlstrom and J. W. Kelso, copartners, doing business under the firm name and style of Dahlstrom Improvement Company, against City of Pawhuska. Judgment for plaintiffs, and defendant appeals. Affirmed.

Wilson, Murphey & Duncan, for plaintiff in error.

Widdows & McCoy, for defendants in error.

Opinion by FOSTER, C. The defendants in error were plaintiffs and the plaintiff in error was defendant in the trial court, and they will be so designated here.

The plaintiffs, T. Dahlstrom and J. W. Kelso, copartners, doing business under the firm name and style of Dahlstrom Improvement Company, recovered a judgment against the defendant, city of Pawhuska, in the district court of Osage county for the sum of $3,788.10, alleged to be due them under a contract whereby they performed certain extra labor in the construction of a sewage disposal plant, which they were under contract to construct for said defendant. Issues were joined and the cause was tried to the court and a jury, resulting in judgment for the amount stated. From this judgment, and from an order overruling its motion for a new trial, the defendant brings the cause regularly on appeal to this court, by petition in error and case-made attached, for review.

The specifications of error relied on by the defendant for a reversal of the judgment are: (a) Error by the trial court in rejecting competent testimony offered, and (b) error by the trial court in not directing the jury to render a verdict in favor of the defendant, upon the ground that the undisputed evidence showed that the plaintiffs and the defendant had a final settlement of all claims on March 26, 1923.

· The facts necessary to be stated, in order to dispose of the legal propositions raised and discussed by the defendant in its brief, are substantially as follows: In the early part of the year 1921, the defendant voted bonds in the sum of $51,000, for the construction of a sewage disposal plant. On December 21, 1921, the defendant entered into a written contract with the plaintiffs to construct this plant for the sum of $39,400, according to plans and specifications drawn by the Olmstead Engineering Company, at the instance of the defendant, which company was also under contract with the defendant to supervise the construction thereof. Work proceeded under this contract until in June, 1922, when the defendant made a contract with Phelps & Son, engineers, to succeed the Olmstead Engineering Company, who prepared new plans and specifications. On August 5, 1922, the plaintiffs and the defendant entered into another written contract, whereby the plaintiffs agreed to build a plant to conform to the new plans made by Phelps & Son, for an additional sum of $6,500, and to waive any claim for damages under the original contract. It appears that in the month of September, 1922, after the plaintiffs had commenced work under the new contract of August 5, 1922, certain changes in the plans and specifications were made by the superintendent of Phelps & Son, in charge of the work of construction, whereby the plant was moved back into the bank of the creek a distance of 17 1-2 feet, making necessary an additional excavation of some 1,912 cubic yards of dirt. The record further discloses that under the contract between Phelps & Son and defendant, the engineers had full authority to supervise the work of constructing the plant, and that the aforesaid changes in the plans and specifications ordered by them were approved by the defendant with full knowledge. Defendant at the same time had notice that the cost of moving the plant a distance of 17 1-2 feet would be extra. The plant was finally completed in March, 1923, accepted by the defendant, and the sum of $45,900, payable under both contracts, was finally received by the plaintiffs on March 26, 1923. Subsequently a claim for extra work and material under the second contract, in the sum of $9,794, was filed by plaintiffs, and rejected by the city, whereupon plaintiffs entered suit therefor, resulting in a judgment as stated, in the sum of $3,788.10.

It is apparent from the foregoing statement, that the only question before the trial court was whether or not plaintiffs were entitled to recover for extras under the second contract. This question was submitted to the jury, and the jury, by its verdict, found that they were entitled to recover the sum of $3,788.10, and if no prejudicial errors of law were committed by the trial court in its ruling upon law questions presented during the trial, and there is evidence reasonably tending to support the verdict, it must be sustained on appeal. It is insisted by the plaintiffs, however, that the trial court erred in excluding the first contract offered in evidence by defendant. We cannot agree to this contention. It being specifically pleaded by defendant that the contract of August 5, 1922, covered the extras for which this action was brought, we cannot see how the first contract would be material or competent, unless the two contracts are to be considered as parts of one and the same contract.

Under the issues, as framed by the pleadings in the case, it would seem that the only question was whether the plaintiffs, by accepting the full amount of $6,500, provided for in the contract of August 5, 1922, could claim an additional sum thereunder for extras furnished. However that may be, we observe nothing in the situation of the parties, at the time the contract of August 5, 1922, was executed, indicating that that contract was to be used in connection with or as a part of the first contract. The situation and conduct of the parties support rather the conclusion that the parties regarded the first contract as having accomplished its purpose, and that a new and independent contract was necessary in order to cover new matters not comprehended in the first contract.

The second contract specifically provided that the contractor should do the work shown on the construction drawings made by Phelps & Son for a specified sum. The mere fact that the work and payments under each contract proceeded contemporaneously, and that they were with the same contractor, did not make one contract in any way dependent upon the other.

There is no contention made, as we understand it, that the second contract was ambiguous so as to make extrinsic evidence competent to explain it, and if the contract be in writing, it must be permitted to speak for itself. Virginia-California Gasoline Co. v. Jordan, 98 Okla. 148, 224 Pac. 325.

It is apparent that the parties, by the contract of August 5, 1922, intended to contract concerning new and different work not covered by the original contract, and we think the contractors are entitled to recover for extras furnished under the new contract without reference to anything that may have

been contained in the original agreement. This result would follow, even without a new contract, where the contractor was required to perform large quantities of work different in character from that originally contemplated by the parties when they made the contract. Salt Lake City v. Smith, 104 Fed. 457.

We do not think that the exclusion of this contract operated to the substantial prejudice of the plaintiffs, justifying a reversal of the judgment. Nor do we think the refusal of the trial court to admit the contract of defendant with the Olmstead Engineering Company reversible error. Disbursements out of the bond fund, in the sum of approximately $1,000, to the Olmstead Engineering Company, were stipulated by the parties in the record, and in view of this stipulation we cannot see how such contract could be material, when it appears that this contract was offered only for the purpose of legalizing payments made to the Olmstead Engineering Company out of the bond fund.

Defendant next complains that it was not permitted to introduce in evidence the estimate of the needs of the city of Pawhuska, as approved by the county excise board, for the fiscal year ending June 30, 1923, upon the theory that by such refusal the defendant was not permitted to show that the claim of plaintiffs exceeded the constitutional and statutory limitations upon the creation of indebtedness by municipalities. This offer of proof disclosed that there was available in the sanitary fund at the time the contract was made on August 5, 1922, for the fiscal year ending June 30, 1923, the sum of $6,000 and in the engineering fund the sum of approximately $7,400, none of which funds were shown to have been expended or appropriated at the time the contract was made, or at the time the extras were furnished.

In the case of Oklahoma City v. Derr, 109 Okla. 192, 235 Pac. 218, our court recognized that it was proper to consider both current funds for the fiscal years and the special bond fund in determining the amount of available funds. No offer was made by the defendant to show that any disbursements or prior appropriations had been made from the current funds for the fiscal year ending June 30, 1923, at the time the extras, under the contract of August 5, 1922, were furnished.

There being no express prohibition in the statute against liability of municipalities for extra work ordered pursuant to change in plans and specifications, it would seem that the plaintiffs have established a prima facie

case of liability for such extras when it is not made to appear that the contract was in excess of the current revenues, and the burden of proof rests on the plaintiffs to prove that the debt was illegally contracted by reason of prior appropriations and disbursements.

In Oklahoma City v. Derr, supra, this court said in the 3rd paragraph of the syllabus:

"The plaintiff in his action against a municipality makes out a prima facie cause of action when he proves performance of the contract, and that the debt is unpaid. Thereupon, the burden shifts to the municipality to show the illegality of the contract, if it be unlawful."

In City of Woodward v. Manhire Grate & Equipment Co., 98 Okla. 83, 224 Pac. 256, it is said in the 3rd paragraph of the syllabus:

"If the plaintiff sues upon a contract for material and equipment furnished a municipal corporation, and proves the contract and performance in accordance with the contract for which the debt was created, it makes a prima facie case for the plaintiff, and the burden of proof is on the municipal corporation to prove that the debt was illegally contracted."

It may be stated in this connection, that there is no contention made on the part of the defendant, that the total expenditures under both contracts, including the amount of the judgment for extras rendered herein under the second contract, exceeded the amount of the bond issue and current revenues for the year ending June 30, 1923.

It has been held in several cases that if a fund is available at the time the contract is made, the fact that this fund is afterwards dissipated, and that none of it remains with which to pay the claim, does not render the contract illegal. School District No. 8 v. Home Lumber Co., 97 Okla. 72, 221 Pac. 433; Buxton & Skinner Stationery Co. v. Commissioners of Craig County, 53 Okla. 65, 155 Pac. 215.

It follows, in the absence of competent testimony of a prior appropriation or disbursement from the current revenues showing a depletion of these funds below the sum for which judgment was rendered in this case, that the estimate of the needs of the city of Pawhuska for the fiscal year ending June 30, 1923, was immaterial, and that the trial court committed no error in excluding it.

In Hutchings v. Winsor, 92 Okla. 37, 217 Pac. 1044, our court said:

"It is well settled in this jurisdiction that,

where it is clearly apparent from the whole record that the error complained of has not in fact operated to the prejudice of the party complaining, the error, if any, will be considered harmless, and will not constitute reversible error."

It is finally contended that under the uncontradicted evidence in the case, a final settlement, including the extras sued for herein, was had by the parties on the 26th day of March, 1923, and that the time sheet offered in evidence by the defendant, and refused, established such final settlement. While there is considerable testimony in the record, by witnesses for the defendant, to the general effect that a final settlement was had with Mr. Kelso, representing the plaintiffs, on March 26, 1923, in which plaintiffs acknowledged full payment and complete satisfaction for extras due them under their contract, this evidence did not, we think, stand uncontradicted by the plaintiffs.

It is established by the record that plaintiffs asserted a right to compensation for the extra work of placing the plant back 17 1-2 feet into the bank of the creek, when this work was first ordered by the engineers representing the defendant, and that the defendant at all times had notice of such claim.

Mr. Kelso, representing the plaintiffs, further testified that on the day previous to the alleged final settlement, he had a conversation with Mr. Buckman, representing the defendant, in which he discussed his claim for extras, and it was agreed that Mr. Buckman should meet him the next day and assist him in getting his claim for these extras allowed by the commissioners, but the said Buckman unexpectedly left town early the following morning by automobile, and when Kelso met the commissioners he did not have his account for extras in shape to present, but that later, failing to get in touch with Mr. Buckman, he prepared and presented his own statement, which was refused by the commissioners. We think this evidence was tantamount to a denial of any final settlement with the commissioners for extras, and that the jury was warranted, in this state of the evidence, in returning a verdict in favor of the plaintiffs.

Furthermore, it is not contended that the extra labor was not, as a matter of fact, performed by plaintiffs. It is not shown that any serious dispute existed between the parties as to the claim of the plaintiffs to compensation for this work prior to the time the alleged settlement was made, on March 26, 1923. What consideration, if any, was received by the plaintiffs for forbearing to assert their claim of right to compensation for extra work, is not disclosed by the record, and we think it must be held that even if plaintiffs, through their agent, Mr. Kelso, did attempt to waive any claim for extra work, as claimed by defendant, it was without consideration and void.

Finding no error in the record warranting a reversal of the case, the judgment of the trial court is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 13 C. J. p. 529, § 487. (2) 28 Cyc. p. 1770. (3) 4 C. J. pp. 851, 853, § 2834; 2 R. C. L. 194; 1 R. C. L. Supp. p. 433; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 79. (4) 28 Cyc. pp. 686 (Anno), 1771. See under (1, 2) 6 R. C. L. p. 909; 2 R. C. L. Supp. p. 241; 28 R. C. L. p. 692.